IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

DONALD R. WHITE, JR.,

       Plaintiff,

V.                              CIVIL ACTION NO. 3:08-0153

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

## **MEMORANDUM ORDER**

In this action, filed under the provisions of 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings and plaintiff's motion to remand.

Plaintiff filed his applications on June 9, 2005, alleging disability commencing April 9, 1999,[1] as a consequence of a neck injury, leg pain, migraines and back and shoulder problems. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the

---

[1]Plaintiff's insured status expired on December 31, 2004 and, for purposes of his application for disability insurance benefits, it was incumbent upon him to establish disability on or before that date. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

Appeals Council denied a request for review.  Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-two years of age and had obtained a high school education and vocational training. His past relevant employment experience consisted of work as a coal miner. In his decision, the administrative law judge determined that plaintiff suffers from "degenerative disc disease of the cervical spine and chronic thoracic spine strain," impairments he found severe. Though concluding that plaintiff was unable to perform his past work,[2] the administrative law judge determined that he had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.21 of the medical-vocational guidelines[3] and the testimony of a vocational expert, he found plaintiff not disabled.

Review of the record reveals deficiencies which will require remand for further proceedings. The evidence documents that plaintiff has a history of neck injuries, the most recent on April 9, 1999, his alleged onset date. When conservative treatment failed, Dr. David Weinsweig performed a cervical discectomy with fusion and plating at the C5-6 level on October 4, 1999. Plaintiff acknowledged at that time that the surgery had eliminated his arm pain, and physical therapy afterward resulted in decreased headaches and pain in the right cervical area. Plaintiff progressed to work conditioning, and in early February of 2000 a functional capacity evaluation placed him at the light-medium level of activity. Despite continued complaints of neck and trapezius pain,

_____

[2]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[3]20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

Dr. Weinsweig released plaintiff to return to work on April 17, 2000; however, his employer did not have work at a light-medium level.

On March 1, 2002, plaintiff reported continued cervical pain into the left and right trapezius areas and also the development of low back pain. He was taking classes to be retrained as an auto mechanic at that time. Exams on this date and thereafter did not reveal neurological deficits, and MRI's have been interpreted as showing post-operative changes but no further surgical condition. While plaintiff indicated at the March 1, 2002 visit he did not desire to pursue physical therapy again or treatment at a pain clinic, his condition apparently became so problematic by early 2005 that he sought help at the the Huntington Spine Rehabilitation and Pain Center for daily headaches and continued neck and upper back pain. Dr. John Baumeier began treating plaintiff on March 30, 2005 for cervical radiculopathy, cervical degenerative disc and joint disease, cervicogenic headaches and cervicobrachial pain. Treatment included medication and a series of epidural steroid injections, administered in July and August 2005.

Plaintiff returned to Dr. Baumeier on November 8, 2005, less than three months after the third injection, reporting a headache of three weeks duration as well as pain at the same level as before the injections. He prescribed stronger medication[4] and injected plaintiff's occipital nerves. Plaintiff continued to see Dr. Baumeier through at least May 12, 2006,[5] when this physician,

---

[4]Dr. Baumeier put plaintiff on Roxicodone, a form of oxycodone, a narcotic analgesic indicated for management of moderate to severe pain. Physicians' Desk Reference, 2590 (63rd Ed. 2009).

[5]Although the report of this visit reflects plaintiff had been last seen on January 13, 2006, a report of this evaluation is not contained in the record.

3

diagnosing "severe chronic pain," changed his medication to Methadone[6] and also prescribed Valium and Prozac for symptoms of anxiety, depression and other "cognitive" changes resulting from the chronic pain. Dr. Baumeier lists these changes as sleep disturbance, irritability, short attention span, forgetfulness, short term memory impairment, easy distractability and depression with anxiety. The report of this visit is the most recent evidence in the record before the administrative law judge, although plaintiff did provide the Appeals Council with an April 26, 2007 note from Dr. Paul Craig who related that plaintiff was receiving treatment for chronic pain syndrome requiring "sustained-release narcotics" and severely limiting his physical activity to "sedentary to very light activities at best." He further expressed the opinion that plaintiff was "100% occupationally disabled." The Appeals Council concluded that this report did not provide a basis for changing the administrative law judge's decision.

        An assessment from a state agency medical advisor on September 14, 2005 contains the opinion that plaintiff was capable of a limited range of light level work. A second evaluator concluded plaintiff could perform a limited range of medium level work in a February 2006 assessment. The administrative law judge, indicating he gave these assessments "great weight," ultimately determined plaintiff could perform light level work allowing for alternation between standing and sitting at one-half hour intervals; occasional reaching overhead, climbing stairs, balancing, crawling, stooping, kneeling and crouching; and an inability to climb ladders, work in temperature/humidity extremes, at heights or around dangerous machinery, or be subjected to vibration.

_____

        [6]This drug, an opioid analgesic, is used in treatment of "severe" pain. Attorney's Dictionary of Medicine, M-171 (2008).

After reviewing the administrative law judge's decision, the Court concludes that this case must be remanded for additional evaluation of the evidence and plaintiff's credibility. The regulations describe a two-step process for evaluating credibility. The administrative law judge must first consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain or other symptoms alleged.[7] If such an impairment is established, the administrative law judge must then evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the individual's ability to do basic work activities.[8] The latter step requires consideration of both the objective medical evidence and subjective evidence of a claimant's pain or other symptoms, and, while objective medical evidence may be "crucial" in evaluating the intensity, persistence, and limiting effects of symptoms, <u>Craig</u> v. <u>Chater</u>, <u>supra</u>. at 595, subjective complaints may not be discredited solely because they lack objective support. <u>Hines</u> v. <u>Barnhart</u>, 453 F.3d 559, 565 (4th Cir. 2006).

In this case, the administrative law judge did not even mention the findings required by the regulations, much less follow them. He simply made a finding that plaintiff's testimony was only "fairly" credible and listed several reasons that purportedly support this finding. The primary factor he relies on is his conclusion that plaintiff's condition improved after surgery. While plaintiff apparently did experience some improvement following surgery, physical therapy and work conditioning, subsequent reports reflect his neck and upper extremity pain was never resolved, and in fact appeared to increase in intensity. He additionally developed frequent headaches and low back

---

[7]<u>See</u>, 20 C.F.R. §§ 404.1529, 416.929. <u>See also</u>, SSR 96-7p; <u>Craig</u> v. <u>Chater</u>, 76 F.3d 585, 592-96 (4th Cir. 1996).

[8]<u>Id</u>.

5

pain. Though the administrative law judge points out that plaintiff was released to work by his surgeon, as noted, he was not able to actually go back to work. As for the completion of the course in auto mechanics, also cited by the administrative law judge, the record does not contain much information about this course, its requirements in terms of lifting, standing, sitting, walking or other work-related activities, or how plaintiff was able to physically handle it. Further, it is noted that plaintiff never performed any work in this field after completing the course. Without more information, it cannot be concluded that this factor is supportive of the administrative law judge's credibility finding.

Finally, the administrative law judge stated that it appeared plaintiff did not have any treatment after October 2005,[9] a clearly erroneous conclusion. The most recent evidence, and particularly the reports from Dr. Baumeier, suggest a deterioration of plaintiff's condition and reflect the prescription of strong pain medication, plaintiff's willingness to undergo seemingly painful measures in an attempt to relieve his pain, and the development of other problems related to the chronic pain. His reports provide compelling evidence of a decline in plaintiff's condition and a belief on his part that his symptoms were genuine and significant. The administrative law judge's unexplained failure to review this evidence undermines not only his credibility finding but his whole decision.

As the court pointed out in Arnold v. Secretary of Health, Education and Welfare, 567 F.2d 258, 259 (4th Cir. 1977), "[u]nless the [Commissioner] has analyzed all of the evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his

---

[9]It is not clear why the administrative law judge mentions this date since the record does not appear to contain any medical reports during this month. The last epidural steroid injection was in August 2005, and plaintiff next saw Dr. Baumeier on November 8, 2005.

decision is supported by substantial evidence approaches an abdication of the Court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" See also, Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). In the absence of any evaluation of Dr. Baumeier's November 2005 and May 2006 reports or any resolution of the conflicts they raise, the Court is unable to conduct a reasoned review of the Commissioner's decision. Remand is therefore necessary for the Commissioner to review all of the evidence and reevaluate plaintiff's credibility, residual functional capacity, and, of course, ability to perform alternate employment, being especially cognizant of the lengthy period covered by his applications. The parties should also be given the opportunity to submit additional, relevant evidence on remand.

On the basis of the foregoing, it is **ORDERED** that this case be remanded to the Commissioner for further proceedings consistent with this Memorandum Order.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER:   November 6, 2009

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE

7